UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────

KHALID BARNES,

      Plaintiff,               10 Civ. 2554 (JGK)

   - against -           MEMORANDUM OPINION AND
                           ORDER
COMISSIONER POZZI, et al.,

      Defendants.
──────────────────────────────────

JOHN G. KOELTL, District Judge:

     The plaintiff, Khalid Barnes, a prisoner who was previously incarcerated by the Westchester County Department of Corrections in the Westchester County Jail, brings this pro se action against Commissioner of Corrections Rocco Pozzi, Captain Vincent Camera, Warden Anthony Amicucci, Associate Warden Orlando, and Associate Warden Cheverko[1] (collectively, the "defendants") under 42 U.S.C. § 1983.  The defendants move to dismiss the Amended Complaint pursuant to Rules 8, 10, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

I.

     In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.[2]

---

[1] The plaintiff mistakenly refers to Assistant Warden Kevin Cheverko as "A.W. Sherveco" in his amended complaint.
[2] While the defendants appear to rely on Rule 12(b)(1) as a basis to dismiss the plaintiff's claims for failure to exhaust administrative remedies, in this case the Court analyzes exhaustion under 12(b)(6).  See Johnson v. Westchester Cnty. Dept. of Corr. Med. Dept., No. 10 Civ. 6309, 2011 WL

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  Id.

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (brackets and internal

---

2946168, at *1-2 (S.D.N.Y. July 19, 2011) (analyzing a motion to dismiss for failure to exhaust administrative remedies under 12(b)(6)).  In any event, it is unnecessary to decide the proper motion because the plaintiff has sufficiently alleged that further exhaustion of administrative remedies was excused.  While the defendants have also relied on Rules 8 and 10, for the reasons explained below, there is no merit to the motion to dismiss based on alleged violations of those rules.

quotation marks omitted).  "Even in a pro se case, however, . .
. threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."  Id.
(internal quotation marks omitted).  Thus, although the Court is
"obligated to draw the most favorable inferences" that the
complaint supports, it "cannot invent factual allegations that
[the plaintiff] has not pled."  Id.; see also Benavides v.
Grier, No. 09 Civ. 8600, 2011 WL 43521, at *1 (S.D.N.Y. Jan. 6,
2011).

## II.

     The following factual allegations set forth in the Amended
Complaint are accepted as true for the purposes of this motion
to dismiss unless otherwise noted.

### A.

     On March 1, 2004, the plaintiff was arrested and charged
with committing numerous federal crimes.  He was subsequently
committed to the custody of the Westchester County Department of
Corrections ("DOC") and housed in the Westchester County Jail.
(Am. Compl. ¶ 3.)  The defendants were employees of the DOC.  In
March 2005, the plaintiff began filing grievances about the
prison's "substandard" conditions.  (Am. Compl. ¶ 12.)  The
plaintiff asserts that in retaliation for his grievance filings,
the defendants subjected him to consistent "acts of reprisal and
discrimination."  (Am. Compl. ¶ 23.)  He further contends that

these acts were part of a larger policy designed by the defendants to suppress the plaintiff's rights.  (Am. Compl. ¶ 14.)

One of the alleged acts of reprisal arose after the plaintiff filed a grievance against prison officials for privacy intrusion.  (Am. Compl. ¶¶ 17, 22.)  The plaintiff contends that, immediately after submitting his grievance, he was transferred from the prison's general population to the "Old Jail," a more restrictive area of the prison.  (Am. Compl. ¶¶ 22, 24, 50.)  The plaintiff claims that the conditions in the Old Jail were "inhumane."  (Am. Compl. ¶ 28.)  The plaintiff alleges that he attempted to file a grievance about the conditions and was told by supervisors that "housing conditions are not grievable."  (Am. Compl. ¶ 27.)  The plaintiff further alleges that this result was common when prisoners attempted to use the facility's grievance procedure.[3]  (Am. Compl. ¶ 30.)

Another alleged act of reprisal occurred after the plaintiff filed a grievance about the facility's policy of providing Halal meals to Jewish detainees but not to Muslim detainees.  (Am. Compl. ¶ 38.)  This grievance was allegedly

---

[3] The plaintiff alleges other defects in the facility's grievance procedure. The plaintiff alleges that after submitting grievances to defendant Orlando, his cell "was immediately shaken down by members of S.S.T." (Am. Compl. ¶ 36.)  In addition, he alleges that defendant Amiccucci along with others would stand "menacingly in front of Plaintiff's cell, arms folded, not speaking." (Am. Compl. ¶ 40.)  These incidents occurred on or before 2006.

denied by Defendant Orlando, the Facility Grievance Coordinator.
(Am. Compl. ¶¶ 35, 37.)  On April 26, 2005, the plaintiff filed
a lawsuit challenging the facility's refusal to provide Halal
meals to Muslim detainees as discriminatory.  (Am. Compl. ¶ 49.)
The plaintiff also organized a food strike among the other
detainees to protest this policy.  (Am. Compl. ¶ 56.)  After
this incident, defendant Camera allegedly told the plaintiff he
was "gonna pay for this."  (Am. Compl. ¶ 59.)  On May 5, 2006
the plaintiff was transferred to the Special Housing Unit
("SHU"), the most restrictive area of the jail.  (Am. Compl. ¶¶
14, 50.)  The defendants maintain that this was the result of an
order by the Commissioner of Corrections that all detainees
facing the death penalty be housed in the SHU.  (Am. Compl. ¶
14.)  Alternatively, the plaintiff maintains that this was a
"guise" to cover up "illegal acts of reprisal," because the
defendants were aware that the plaintiff was facing the death
penalty as early as June 2004 and yet only transferred him after
he began his advocacy concerning the food policy.  (Am. Compl. ¶
10, 14.)

In June 2006, the plaintiff was transferred to the
Metropolitan Correctional Center in New York City ("MCC").  (Am.
Compl. ¶ 75.)

**B**

On February 8, 2008, 19 months later, the plaintiff was transferred back to the Westchester County Jail for his trial in the White Plains Courthouse of the United States District Court for the Southern District of New York.  (Am. Compl. ¶¶ 80, 94.); United States v. Barnes, 532 F. Supp. 2d 625 (S.D.N.Y. 2008). At trial, the government sought the death penalty for the plaintiff, who was charged with racketeering, narcotics distribution, and murder.  Id.  The plaintiff remained at the Westchester County Jail until the conclusion of his trial in June 2008, when he was transferred back to the MCC (Am. Compl. ¶ 94).  The plaintiff alleges that two significant violations occurred during this four-month window.

First, the plaintiff asserts that he was wrongfully confined in the SHU during his 2008 confinement at the Westchester County Jail.[4]  (Am. Compl. ¶¶ 81, 82, 94.)  He lists a number of "restrictive and punitive conditions" that were

---

[4]  In his memo, the plaintiff points to a list of paragraphs that relate to his SHU confinement after discussing his transfer back to the Westchester County Jail in February 2008.  (Pl.'s Memo of Law Opposing the Def.'s Mot. to Dismiss ¶¶ 21, 22.)  The plaintiff also states that he was housed in the Westchester County Jail throughout his 2008 criminal trial in White Plains. (Pl.'s Memo of Law Opposing the Def.'s Mot. to Dismiss ¶ 23.)  In addition, he alludes to a worsening of SHU conditions during his 2008 death penalty trial in White Plains.  (Am. Compl. ¶¶ 81, 82.)  However, the plaintiff has not otherwise dated any of the incidents relating to his SHU confinement. Thus, it is unclear whether they refer to his 2006 SHU confinement, 2008 SHU confinement, or both.  Nevertheless, construing the pro se plaintiff's complaint liberally, these incidents have been treated as relating to his 2006 and 2008 SHU confinement.

imposed on him during his SHU confinement, such as cold food and showers, restraints, strip searches, and delayed personal and legal visits. (Am. Compl. ¶ 71.) The plaintiff further alleges that he witnessed several detainees attempt to commit suicide in the SHU and was subjected to a constant "cacophony of sounds." (Am. Compl. ¶ 72.) As a result, the plaintiff claims that he became "severely depressed" and "suffered severe anxiety and physiological issues." (Am. Compl. ¶ 73.) The plaintiff contends that he "relayed this information to the defendants" and that "they did nothing to redress plaintiffs concerns but sit on their hands." (Am. Compl. ¶ 73.) He also asserts that these conditions were "exacerbated" while he was housed in the Westchester County Jail for his 2008 trial in White Plains, New York. (Am. Compl. ¶ 82.)

Second, the plaintiff alleges that he was wrongfully placed on suicide watch. In 2008 at the Westchester County Jail, the plaintiff refused breakfast and lunch, and jail officials sent for a physician's assistant. (Am. Compl. ¶ 89.) The physician's assistant placed the plaintiff on suicide watch, despite the plaintiff having no history of suicidal behavior and stating that he did not intend to harm himself. (Am. Compl. ¶ 89.) The plaintiff was then ordered to take off his clothes and had all his personal property removed from his cell. (Am. Compl. ¶ 90.) This caused the plaintiff "severe humiliation."

(Am. Compl. ¶ 91.)   The plaintiff asserts that he attempted to
file a grievance about his placement on suicide watch and was
told "suicide watch is not grievable."   (Am. Compl. ¶ 92.)

On March 22, 2010, the plaintiff filed his original
complaint in this case.   He later filed an Amended Complaint on
September 29, 2011 against Pozzi, Amicucci, Orlando, Cheverko,
and Camera.   Pozzi is the Commissioner of Corrections at the
Westchester County Jail.   (Am. Compl. ¶ 4.)   Amicucci is the
Warden at the Westchester County Jail and is responsible for the
general welfare of the inmates.   (Am. Compl. ¶ 5.)   Orlando and
Cheverko are Associate Wardens at the Westchester County Jail.
(Am. Compl. ¶¶ 6, 7.)   Camera is a Supervisor at the Westchester
County Jail.   (Am. Compl. ¶ 8.)   The Amended Complaint alleges
that the defendants violated the First, Fifth, Eighth, and
Fourteenth Amendments, after they subjected the plaintiff to:
unsafe housing conditions, deliberate indifference to medical
needs, religious discrimination, racial discrimination,
retaliation for filing grievances and lawsuits, and attorney
client privilege violations.   (Am. Compl. ¶ 101.)

### III.

The defendants move to dismiss the Amended Complaint
pursuant to Rules 8, 10, 12(b)(1), and 12(b)(6) of the Federal
Rules of Civil Procedure.   They argue that the Amended Complaint
should be dismissed because: (a) the plaintiff has failed to

meet the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure; (b) the plaintiff's claims are barred by the statute of limitations; (c) the plaintiff has failed to exhaust his administrative remedies; (d) the plaintiff's claims are barred by res judicata and collateral estoppel; (e) the plaintiff has failed to allege personal involvement on the part of the individual defendants; (f) the plaintiff has failed to allege the existence of a municipal policy or practice that caused his alleged injury; and (g) the municipality is immune from punitive damages.

**A.**

The defendants assert that the plaintiff's Amended Complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and thus should be dismissed.  Rule 8(a) provides that a pleading must contain: "(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a).  "[T]he purpose of Rule 8(a)(2) is to give fair notice of a claim and the grounds upon which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial." Elektra Entm't Grp., Inc. v. Barker, 551 F. Supp. 2d

9

234, 238 (S.D.N.Y. 2008) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Leibowitz v. Cornell Univ.</u>, 445 F.3d 586, 591 (2d Cir. 2006).

Although a court may dismiss a complaint <u>sua sponte</u> for noncompliance with Rule 8, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995) (quoting <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988)).  In addition, a court remains obligated to read <u>pro se</u> complaints liberally.  <u>See</u> <u>id.</u> at 87.

Here, reading the plaintiff's complaint liberally, the plaintiff has described numerous specific incidents of retaliation that occurred after the plaintiff filed grievances, specific allegations of a defective grievance procedure, and specific allegations of a policy of retaliation.  <u>See</u> Am. Compl. ¶¶ 13, 14, 30, 36, 86.  Admittedly, the structure of the Amended Complaint does not make it easy to ascertain what claims the plaintiff seeks to assert against which defendants.  However, the plaintiff does allege specific claims (Am. Compl. ¶ 101) and supports these claims with specific factual allegations.  Thus, the amended complaint cannot be said to be so unintelligible as to deprive the defendants of fair notice of the claims asserted against them.

The defendants also contend that the plaintiff has failed
to comply with the requirements of Rule 10, which requires that
"[a] party must state its claims or defenses in numbered
paragraphs, each limited as far as practicable to a single set
of circumstances." Fed. R. Civ. P. 10(b).  As an initial
matter, the Amended Complaint does set forth the claims in
numbered paragraphs.  Moreover, the Second Circuit Court of
Appeals has made clear that courts should be "especially []
willing to overlook harmless violations of Rule 10(b)" and that,
"where the absence of numbering or succinct paragraphs does not
interfere with one's ability to understand the claims or
otherwise prejudice the adverse party, the pleading should be
accepted." Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir.
2005).  Thus, neither Rule 8 nor Rule 10 provides a basis for
dismissing the plaintiff's Amended Complaint.

**B.**

The defendants contend that the plaintiff's claims for
violations of § 1983 are time-barred.  In New York, the statute
of limitations governing § 1983 actions is three years.  See
Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004).

The plaintiff's original complaint in this case is dated
February 8, 2010.  In his amended complaint, the plaintiff
alleges that he was subjected to numerous retaliatory acts from
March 2005, when he began filing grievances, until June 2006,

11

when he was transferred out of the Westchester County Jail.
Absent tolling, these claims would be untimely.  The plaintiff
asserts that the continuing violations doctrine may be applied
to toll the statute of limitations and make these claims
actionable.  In order to invoke the continuing violations
doctrine, the plaintiff must "show that the harm complained of
constituted not a series of discrete acts but an ongoing policy,
[so that] the commencement of the statute of limitations period
may be delayed until the last discriminatory act in furtherance
of it."  Smith v. N.Y.C. Dep't of Educ., No. 09 Civ. 9256, 2011
WL 5118797, at *5 (S.D.N.Y. Oct. 28, 2011).

In this case, the plaintiff cannot rely on the continuing
violation doctrine to resuscitate claims about actions in 2005
and 2006 because the alleged violations against him were not
continuous.  The plaintiff was transferred out of the
Westchester County Jail in June 2006, and did not return to the
facility until February 8, 2008, nineteen months later.  The
plaintiff has failed to allege any violation of his rights
during this nineteen month time period.  "A lack of temporal
continuity . . . is 'fatal' to a 'continuing violation'
argument."  Everson v. N.Y.C. Transit Auth., 216 F. Supp. 2d 71,
79 (E.D.N.Y. 2002); see also Weeks v. N.Y. State Div. of Parole,
273 F.3d 76, 84 (2d Cir. 2001) ("Absent unusual circumstances, a
two-year gap is a discontinuity that defeats use of the

continuing violation exception").  In addition, the plaintiff
had ample time during those nineteen months to file a complaint
for violations that occurred prior to June 2006.  Moreover, the
plaintiff complains largely of discrete acts of harassment or
retaliation, to which the continuing violations doctrine does
not apply.  See Shomo v. City of New York, 579 F.3d 176, 182 (2d
Cir. 2009) (continuing violations doctrine does not apply to
"discrete acts of unconstitutional conduct").  Thus, the
continuing violation doctrine does not apply to toll the statute
of limitations for the plaintiff's claims, and only violations
that occurred within the three years prior to February 8, 2010
are actionable.

     The plaintiff does assert violations that occurred during
this time period.  Specifically, he asserts that, after he was
transferred back to the Westchester County Jail on February 8,
2008, he was wrongfully confined in the SHU and placed on
suicide watch in retaliation for filing a lawsuit.  These
alleged violations occurred within three years of February 8,
2010, and are therefore not barred by the statute of
limitations.

     The defendants' motion to dismiss is therefore granted to
the extent that any claims arising before February 8, 2007 are
dismissed.

C.

The defendants next contend that the Amended Complaint should be dismissed because the plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). This contention fails because the plaintiff has sufficiently alleged that the grievance procedure was ineffective. The allegations are sufficient to survive a motion to dismiss.

An inmate's failure to exhaust administrative remedies under the PLRA "may be excused where: (1) administrative remedies were not in fact available to the prisoner, (2) defendants' own actions inhibit[ed] exhaustion, or (3) special circumstances . . . justify non-exhaustion." Messa v. Goord, 652 F.3d 305, 309 (2d Cir. 2011) (per curiam) (internal quotation marks omitted).

Here, the plaintiff alleges that, with respect to his placement on suicide watch in 2008, he was told that such a decision was "not grievable." (Am. Compl. ¶ 92.) If true, this could amount to a circumstance in which administrative remedies were not available to the plaintiff. In addition, the plaintiff asserts that the grievance policy was generally ineffective because his grievances were met with threats and reprisals. See Am. Compl. ¶¶ 30, 36. Construing the plaintiff's pro se complaint liberally, it alleges enough instances of reprisal

14

potentially to constitute a special circumstance that justifies
non-exhaustion.  See Hemphill v. New York, 380 F.3d 680, 690 (2d
Cir. 2004) (holding that threats made towards an inmate by
prison officials could amount to a special circumstance
justifying the inmate's non-exhaustion).  Whether administrative
remedies were in fact available to the plaintiff and whether
they were otherwise ineffective are questions of fact that
cannot be resolved on this motion to dismiss.  Accordingly, the
defendants' motion to dismiss the Amended Complaint on the basis
of the plaintiff's failure to exhaust administrative remedies is
denied.

**D.**

The defendants next argue that the plaintiff's claims are
barred by collateral estoppel and res judicata because the
plaintiff previously filed a Petition for Writ of Habeas Corpus
under 28 U.S.C. § 2241.

Federal law determines the preclusive effect of a federal
judgment.  See Marvel Characters, Inc. v. Simon, 310 F.3d 280,
286 (2d Cir. 2002).  Res judicata, or claim preclusion, "bars
later litigation if an earlier decision was (1) a final judgment
on the merits, (2) by a court of competent jurisdiction, (3) in
a case involving the same parties or their privies, and (4)
involving the same cause of action."  EDP Med. Computer Sys.,
Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (quoting

15

In re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985)).  The party claiming res judicata bears the burden of proving that the second action is barred, and it is not "dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues." Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997) (internal citations omitted).

Collateral estoppel, or issue preclusion, applies when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits."  Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) (internal quotation marks and citation omitted).  The burden of proving that the "identical issue was previously decided" is on the party asserting preclusion, and it must be "quite clear" that the requirements of collateral estoppel have been met.  Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995).

Here, it is unclear whether there was a final judgment on the merits in the plaintiff's previous § 2241 proceeding.  On February 24, 2008, the plaintiff brought a habeas petition before Judge Robinson of this Court, complaining about his SHU confinement in the Westchester County Jail.  However, it does

16

not appear that a written determination of this habeas petition was issued.  The defendants point to no decision that could be considered final for the purposes of res judicata or collateral estoppel.

The defendants argue, however, that collateral estoppel is a "flexible" doctrine, and that the plaintiff's continuous confinement in the SHU is evidence that his habeas petition was denied.  However, there is no basis to conclude that the plaintiff's continuous confinement in the SHU means that Judge Robinson must have issued a final judgment denying the plaintiff's petition.  The burden of proving res judicata or collateral estoppel rests with the defendants, and the defendants have failed to establish that there is a final judgment with preclusive effect.  Accordingly, the defendants' motion to dismiss the Amended Complaint on this basis is denied.

**E.**

The defendants argue that the plaintiff has failed to allege personal involvement on the part of the five individual defendants.

A plaintiff must plead the personal involvement of each defendant in a § 1983 violation.  "There is no respondeat superior liability in § 1983 cases."  Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  Instead, "a plaintiff must plead

17

that each Government-official defendant, through the official's

own individual actions, has violated the Constitution." Iqbal,

556 U.S. at 676.

The law in this Circuit before Iqbal was that a plaintiff

may state a claim against a supervisory defendant in a § 1983

case when the plaintiff alleges that:

> (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being
> informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a
> policy or custom under which unconstitutional practices
> occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in
> supervising subordinates who committed the wrongful acts,
> or (5) the defendant exhibited deliberate indifference ...
> by failing to act on information indicating that
> unconstitutional acts were occurring.

Colon, 58 F.3d at 873.  However, courts in this Circuit are

divided over the question of how many of the so-called Colon

factors survive in the wake of Iqbal.  Compare Martinez v.

Perilli, No. 09 Civ. 6470, 2012 WL 75249, at *4 (S.D.N.Y. Jan.5,

2012) ("[T]he five Colon categories still apply after Iqbal."),

with Bellamy v. Mount Vernon Hosp., No. 07 Civ. 1801, 2009 WL

1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and

part of the third Colon categories pass Iqbal's muster, a

supervisor is only held liable if that supervisor participates

directly in the alleged constitutional violation or if that

supervisor creates a policy or custom under which

unconstitutional practices occurred").  In any event, it remains

the case that "allegations that do not satisfy any of the Colon prongs are insufficient to state a claim against a defendant-supervisor." Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec., 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011).

The plaintiff's complaint against defendants Pozzi and Cheverko in their individual capacities must be dismissed. The plaintiff does not even mention defendants Pozzi and Cheverko anywhere in the Amended Complaint besides the caption and list of defendants. Accordingly, the plaintiff has failed to plead sufficiently these individuals' personal involvement and the claims against them in their individual capacities must be dismissed.

The plaintiff does mention defendants Amicucci, Orlando, and Camera, in the body of the Amended Complaint. However, the plaintiff only mentions their names with respect to incidents that occurred prior to June 2006. Accordingly, claims against those defendants in their individual capacities are barred by the statute of limitations and must be dismissed.

The plaintiff also mentions the names of other individuals listed in his original complaint as defendants with respect to incidents that occurred within the statutory period. However, these defendants are not named as defendants in the Amended Complaint and therefore have been dropped from the litigation.

19

Accordingly, because the Amended Complaint does not allege the personal involvement of any of the named defendants, the claims against these defendants in their individual capacities are dismissed.[5]

**F.**

The defendants further argue that the plaintiff has not pleaded a basis for municipal liability.[6]

"Municipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978)). Municipalities are not subject to liability under theories of respondeat superior, but rather on the basis that their policies or customs "inflict[ed] the injury upon the plaintiff." Id. "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff

---

[5] Because the plaintiff plainly has failed to allege the personal involvement of the individual defendants, it is unnecessary to reach the defense of qualified immunity. Likewise, the plaintiff's claim for deliberate indifference to medical needs must be dismissed because it fails to allege the personal involvement of any individual defendant. In addition, any Monell claim against Westchester County premised on deliberate indifference to medical needs must be dismissed because the plaintiff has not alleged the existence of any custom or policy of denying medical care to prisoners.

[6] Although the plaintiff does not list the County as a defendant, claims against municipal defendants in their official capacity are equivalent to claims against the County. See Scaccia v. Cnty. of Onondaga, No. 07 Civ. 207, 2009 WL 4985683, at *9 (N.D.N.Y. Dec. 15, 2009) ("To the extent Plaintiff sues [Defendants] in their official capacity, Plaintiff's claims are equivalent to a claim against the County").

is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Id.; see also Adam v. Metro. Transp. Auth., No. 07 Civ. 8807, 2011 WL 891441, at *3 (S.D.N.Y. Mar. 15, 2011).

In this case, the defendants argue that the plaintiff has failed to allege that the claimed violations occurred as a result of a municipal policy or custom. However, the violations alleged by the plaintiff are sufficient to survive a motion to dismiss. The plaintiff alleges that the defendants created "a bias system where the plaintiff was met with retaliation, intentional interference, and callous indifference in the right to exercise free speech." (Am. Compl. ¶ 14.) He supports this assertion with specific allegations.

In 2008, the plaintiff alleges that his placement on suicide watch and SHU confinement were retaliation for his earlier advocacy. See Am. Compl. ¶¶ 81, 89, 90. These allegations of a municipal policy are sufficient to survive a motion to dismiss. See Gashi v. Cnty. Of Westchester, No. 02 Civ. 6934, 2005 WL 195517, at *12 (S.D.N.Y. Jan. 27, 2005) ("[plaintiff] has alleged that his mistreatment by corrections staff was pursuant to the customs and practices of the Westchester County Jail-very close to an allegation that his mistreatment was pursuant to customs and practices of the County

21

itself, which even standing alone would likely be sufficient to survive a motion to dismiss"); see also Varricchio v. Cnty. Of Nassau, 702 F. Supp. 2d 40, 61 (E.D.N.Y. 2010) ("The Court concludes that, by alleging at least three instances in which he personally was allegedly maliciously prosecuted, plaintiff has adequately alleged the existence of a policy or procedure of malicious prosecution by the County.").

Thus, the motion to dismiss the plaintiff's claim for municipal liability for the alleged violations of his constitutional rights that allegedly occurred during his 2008 confinement in the County Jail is denied.

### G.

Finally, the defendants seek to dismiss the plaintiff's claim for punitive damages.  A municipality is not subject to punitive damages under § 1983.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  Accordingly, any claims for punitive damages against the County are dismissed.

## CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion to dismiss is **denied in part** and **granted in part**.  The Clerk is directed to close Docket No. 51.

**SO ORDERED.**

Dated:    New York, New York
           August   2  , 2012

                                    John G. Koeltl
                              United States District Judge

23